IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2021 JUN -8 P 2: 02

CLER~
SO. ~T. OF GA.

NATIONAL TRUST INSURANCE
COMPANY and MONROE GUARANTY
INSURANCE COMPANY,

    Plaintiffs,

       v.

TAYLOR & SONS, INC.,
BRIAN LLOYD, BEVERLY LLOYD,
JOE WOJTANIK, and MADELYN
POLLACK,

    Defendants.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

CV 319-067

---

**O R D E R**

---

Before the Court is Plaintiffs National Trust Insurance Company ("National Trust") and Monroe Guaranty Insurance Company's ("Monroe") motion for summary judgment. (Doc. No. 30.) The Clerk has given Defendants notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and the consequences of default. Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied. The motion has been fully briefed and is ripe for decision. For the following reasons, the motion is denied in part and denied without prejudice in part.

## I.   BACKGROUND

This case stems from a suit in the Superior Court of Laurens County (the "Superior Court case"), which in turn is based on a motorcycle accident that allegedly occurred on or about November 5, 2017.  (See Superior Ct. Am. Compl., Doc. No. 30-2, ¶¶ 8-19.) Defendants Brian and Beverly Lloyd, plaintiffs in the Superior Court case, allege that Brian Lloyd was riding his motorcycle on Highway 26 in Laurens County when it collided with a loose trailer which had uncoupled from the pick-up truck towing it.  (Id.)  The truck and trailer were allegedly owned by Defendant Taylor & Sons, Inc. ("Taylor"), entrusted to Defendant Joe Wojtanik, and driven by Defendant Madelyn Pollack.   (Id.)   The Lloyds sued Wojtanik, Pollack, and Taylor in the Superior Court case, alleging that Pollack was negligent in her driving. (Id. ¶ 18.)  The Lloyds also allege that Pollack and Wojtanik were negligent in securing the load on the vehicle and that Taylor was negligent in hiring Wojtanik as well as negligent in entrusting the company vehicle to Wojtanik. (Id. ¶¶ 21-30.)  Wojtanik was eventually "dropped" from the initial Superior Court case.[1]  (See Doc. No. 30-4.)

---

[1] Taking judicial notice of the docket in Superior Court of Laurens County, it appears that Wojtanik was "dropped" from the initial Superior Court case, which was filed in 2019.  The Lloyds apparently voluntarily dismissed the 2019 case without prejudice after Wojtanik was dropped.  The case was refiled in October of 2020. Wojtanik is a defendant in that case.

Plaintiffs in this case, National Trust and Monroe, are not parties to the Superior Court case. Both companies issued insurance policies to Taylor. (Doc. Nos. 1-3; 1-4; 1-5.) Monroe issued a Commercial Auto Policy ("Monroe Policy") to Taylor for a policy period including the incident. (Monroe Policy, Doc. No. 1-3, at 11.)[2] National Trust issued a Commercial General Liability Policy and an Umbrella Policy to Taylor for a policy period including the incident. (CGL Policy, Doc. No. 1-5, at 5; Umbrella Policy, Doc. No. 1-4, at 6.)

Plaintiffs instituted this action seeking a declaratory judgment that they have no obligation to indemnify, defend, or pay any sum on behalf of Wojtanik and Pollack in connection with the Superior Court case or the Lloyds' claims. (See Compl., Doc. No. 1.) Defendants previously moved to dismiss, urging the Court to exercise its discretion and decline jurisdiction, but the motion was denied. (See Doc. Nos. 17; 26.) Now, Plaintiffs move for summary judgment, arguing that neither Pollack nor Wojtanik are covered persons under any of the insurance policies.

A. The Alleged Incident and the Parties Involved

Scott Donaldson is the sole owner, President, and CEO of Taylor, which is a Georgia corporation that does "complete site

---

[2] Any reference to page numbers of the insurance policies will refer to the pagination created by the CM/ECF system and not the printed page numbers of the policy.

work service[,]" preparing construction sites, laying foundations, and more. (Donaldson Dep., Doc. No. 30-5, at 11-12, 17.) At the relevant time, Wojtanik worked as a surveyor for Taylor, and reported directly to Donaldson. (Wojtanik Dep., Doc. No. 30-7, at 16, 100.) Pollack was Wojtanik's companion and mother of Wojtanik's children, but not a Taylor employee. (Id. at 13; Donaldson Dep. at 111.)

Taylor owned the truck and trailer involved in the incident. (Donaldson Dep. at 110.) Taylor assigned the truck to Wojtanik, who kept the truck - and on occasion, a trailer owned by Taylor - at his house. (Wojtanik Dep. at 28-34.) Wojtanik driver's license was suspended in May of 2017 but he was permitted to keep the truck and trailer at his house. (Id. at 55-56.) Taylor contends that it revoked Wojtanik's permission to drive any Taylor-owned vehicles following the loss of his license, and Wojtanik did not have permission to loan the truck to anyone else.[3] (Id. at 55-57; Donaldson Dep. at 46, 109-11 ("[Q]: Joe Wojtanik did not have permission to drive that truck? A: Correct, he did not. Q: For any reason? A: No reason.")) According to Donaldson, Pollack never had permission to drive the truck. (Donaldson Dep. at 111.)

Donaldson acknowledged that he was aware of employees using Taylor vehicles on personal time and for personal reasons. (Id. at

---

[3] Because Wojtanik could not legally drive, Taylor hired a driver for him. (Donaldson Dep. at 111.)

71; Letter to Employees, Doc. No. 37-17.) He began a letter he sent
to his employees after the incident by stating, "I must stop turning
a blind eye for convenience," referencing the use of Taylor vehicles
outside of company duties and work-related travel. (Letter to
Employees.)

Despite Donaldson's testimony, Pollack understood that she had
permission to drive the truck and another Taylor utility vehicle.
(Pollack Dep., Doc. No. 30-8, at 27, 43, 56-58.) Her understanding
was that Wojtanik had asked Donaldson's permission for her to drive
the truck. (Id. at 43.) However, Pollack was not aware of whether
Wojtanik had actually obtained permission on her behalf, and she
never directly received permission from someone at Taylor – except
for one occasion when she drove Wojtanik home from Donaldson's house
after Wojtanik had been drinking. (Id. at 43-44, 55-58.) Wojtanik
also acknowledged that Pollack did not have express permission to
use the truck to haul a trampoline, but that he assumed based on
past permission that it would be okay. (Wojtanik Dep. at 108, 110-
12.) Wojtanik also testified to the contrary, stating that
Donaldson had given Pollack permission to use Taylor-owned vehicles
on several occasions. (Id. at 67-68.) For example, Pollack used
Taylor vehicles to go to the dump and drive Wojtanik to job sites,
in addition to the occasion when she drove Wojtanik home from
Donaldson's house with Donaldson's knowledge. (Id. at 68-72.)
Wojtanik also stated that Donaldson had been "alright with" Pollack

5

using the truck on prior occasions and that Pollack had in fact been given permission to drive a Taylor vehicle at some point in time. (Id. at 108, 121-22.) All in all, Wojtanik recalls Pollack using a Taylor vehicle "a handful of times in several years." (Id. at 72.)

On November 5, 2017 – the day of the incident - Pollack was using the truck and trailer to haul her daughter's trampoline to their new home. (Pollack Dep. at 42-44; Wojtanik Dep. at 109.) With the help of some "neighborhood kids," Pollack loaded the trampoline onto the trailer. (Pollack Dep. at 45.) The trailer had already been attached to the truck by either Wojtanik or another Taylor employee. (Wojtanik Dep. at 75-76.) Interestingly, Pollack did not notice when the trailer became detached. By the time Pollack arrived at her new home, she realized the trailer was missing. (Pollack Dep. at 31, 46.) When the trailer separated from the truck, it allegedly struck Defendant Brian Lloyd on his motorcycle. (Superior Ct. Am. Compl. ¶¶ 8-19; Accident Report, Doc. No. 37-9.) After realizing that the trailer was missing, Pollack retraced her route in her personal car and found the trailer with the trampoline still partially attached. (Pollack Dep. at 47.) The Accident Report states that the trailer's safety chains were not attached to the truck. (Accident Report at 8.)

6

B. The Insurance Policies

The relevant portions describing coverage of the three policies are given below.

*1. The Monroe Policy*

The Monroe policy defines "insureds" as "a. You for any covered auto," ("You," meaning the named insured, or in this case Taylor), "b. Anyone else while using with [Taylor's] permission a covered 'auto'[4] you own, hire or borrow," and "c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability." (Monroe Policy at 57-58.)

*2. The National Trust CGL Policy*

Defendants concede that the CGL Policy is inapplicable in this case. (Defs.' Resp. to Mot. for Summ. J., Doc. No. 37, at 3 n.8.)

*3. The National Trust Umbrella Policy*

With respect to liability arising out of the use of covered autos, the Umbrella Policy covers Taylor as the named insured, as well as same three scenarios covered in the Monroe Policy. (Compare Monroe Policy at 57-58 with Umbrella Policy at 24.) "Covered auto" is defined as "those 'autos' to which 'underlying insurance' applies." (Umbrella Policy at 28.) "Underlying insurance" in turn refers to the Monroe Policy. (Id. at 13.)

---

[4] An "Auto" is "A land motor vehicle, 'trailer' or semitrailer designed for travel on public roads." (Monroe Policy at 65.)

## II.   JURISDICTION

Diversity jurisdiction under 28 U.S.C. § 1332 exists in this case.   Plaintiffs are corporations organized under the laws of Indiana with principal places of business in Florida, while Defendants are all Georgia citizens.   The amount in controversy threshold is satisfied because the damages alleged in the Superior Court Case total more than $480,000.   (Superior Ct. Am. Compl. ¶¶ 32-39.)   This suit may determine whether Plaintiffs are liable for any such damages in the Superior Court Case.

Discussion of discretionary jurisdiction under the Declaratory Judgment Act can be found *infra* at Section IV.A.

## III. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).   A "material" fact is one that could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), while a dispute is genuine "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor."   Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001).   Any inferences drawn from the facts must be in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

8

475 U.S. 574, 587 (1986), and the Court is to "resolve all reasonable doubts about the facts in favor of the non-movant." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court may not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court the basis for its motion by reference to materials in the record. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant may carry its initial burden in different ways depending on who bears the burden of proof at trial. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the movant bears the burden at trial, it must make an affirmative showing of an absence of a genuine issue of material fact. See id. The nonmovant must then respond with "evidence sufficient to call into question the inference created by the movant's evidence on the particular material fact" to avoid summary judgment. Id. at 1116.

When the nonmovant bears the burden of proof at trial the movant has two options as to how it can carry its initial burden. Id. at 1115-16. The movant may demonstrate an absence of evidence to support the nonmovant's case, or provide affirmative evidence demonstrating the nonmovant's inability to prove its case at trial. Id. The nonmovant must then respond according to the manner used by the movant. The nonmovant must respond with "evidence sufficient

9

to withstand a directed verdict" when the movant provided affirmative evidence. Id. When the movant demonstrates an absence of evidence, the nonmovant may either identify evidence in the record sufficient to withstand a directed verdict, or the nonmovant may come forward with additional evidence sufficient to withstand a directed verdict. Id. at 1116-17.

## IV.  DISCUSSION

The Parties have refined question of Wojtanik and Pollack's coverage to the issue of whether they had permission to use the Taylor vehicles on the day of the incident. That is a question of contractual interpretation to be decided under Georgia law. See Hays v. Ga. Farm Bureau Mut. Ins. Co., 722 S.E.2d 923, 925-26 (Ga. Ct. App. 2012).[5] "[W]hen faced with a conflict over coverage, a trial court must first determine, as a matter of law, whether the relevant policy language is ambiguous." Id. (quotation and citation omitted).  Parties to an insurance contract are bound by its unambiguous terms, and "[a] policy . . . susceptible to two reasonable meanings is not ambiguous if the trial court can resolve the conflicting interpretations by applying the rules of contract

---

[5] The three insurance policies were issued to Taylor - a Georgia corporation - in Georgia. (See Monroe Policy at 11, 22; Umbrella Policy at 6, 12; CGL Policy at 5, 88.)  Under Georgia law, the construction and interpretation of a contract are governed by the law of the state where the contract was made, in this case, Georgia. Fed. Ins. Co. v. Nat'l Distrib. Co., 417 S.E.2d 671, 673 (Ga. Ct. App. 1992).

construction." Id. (quotation and citation omitted). In other words, there is no jury question unless the rules of construction fail to resolve an ambiguity. Nationwide Mut. Fire Ins. Co. v. Somers, 591 S.E.2d 430, 433 (Ga. Ct. App. 2003).

Defendants argue that it is too early to determine whether Plaintiffs have a duty to indemnify under the Policies and would have this Court only determine Plaintiffs' duty to defend in the Superior Court case. See Grange Mut. Cas. Co. v. Dasher, 2013 WL 85244, at *5 (S.D. Ga. Jan 7, 2013) ("[T]he duty to defend and the duty to indemnify are distinct and analyzed separately." (citation omitted)). The duty to defend is broader than the duty to indemnify, but if no duty to defend exists, neither does a duty to indemnify. Shafe v. Am. States Ins. Co., 653 S.E.2d 870, 873 (Ga. Ct. App. 2007); Nat'l Cas. Co. v. Pickens, 582 F. App'x 839 (Mem), 841 (11th Cir. 2014) ("If there is no duty to defend, there is no duty to indemnify." (citing Id.)). Therefore, Plaintiffs' duty to indemnify and duty to defend are considered separately below.

A. Duty to Indemnify

Defendants argue that the question of Plaintiffs' duty to indemnify is not yet ripe, citing to cases from the Eleventh Circuit and this Court. Grange Mut. Cas. Co., 2013 WL 85244, expounds on the Eleventh Circuit's guidance for the question of whether a district court should exercise its discretionary jurisdiction under the Declaratory Judgment Act and decide an issue of indemnity.

"[T]he duty to indemnify is triggered only when the insured is determined to be liable for damages within the policy's coverage." Id. at *5 (quotation and citation omitted).   The Eleventh Circuit therefore "has cautioned against the exercise of jurisdiction in suits for declaratory judgment when the question of . . . insurance coverage may never arise due to the lack of a judgment establishing the liability of the insured."   Id. (quoting Edwards v. Sharkey, 747 F.2d 684, 686 (11th Cir. 1984)).   The court in Grange went on to heed that warning and declined to decide the question of indemnity while the underlying state court action was pending.   Id. at *6.

Plaintiffs respond with Georgia case law.   In ALEA London Ltd. v. Woodcock, 649 S.E.2d 740, 746-47 (Ga. Ct. App. 2007), the Court of Appeals of Georgia considered the argument that determining the duty to indemnify is not ripe until the insured is held liable in the underlying suit.   The Court of Appeals stated that "the propriety of deciding both a duty to defend and to indemnify in the same declaratory judgment action is well established."   Id. at 747. However, courts have discretion not to decide whether there is a duty to indemnify before liability is established in an underlying suit.   See, e.g., Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc., 766 F. App'x 768, 770-71 (11th Cir. 2019) (upholding district court's decision declining to address indemnity question before liability in underlying suit established); Grange

12

Mut. Cas. Co., 2013 WL 85244, at *5-7 (declining to rule on duty to indemnify but ruling on duty to defend); Essex Ins. Co. v. Sega Ventures, LLC, 2015 WL 1505979, at *3-4 (S.D. Ga. Mar. 15, 2015) (declining to decide duty to indemnify).

Considering the current stage of this case and the issue on which it turns as well as the progress of the Superior Court case,[6] declining to decide the question of the duty to indemnify will ensure that the factual record is fully developed and avoid the possibility of determining coverage when a judgment establishing liability may never be reached in the underlying case. See Edwards, 747 F.2d at 686. The Court therefore declines to presently decide whether Plaintiffs owe that duty and therefore Plaintiffs' summary judgment motion is denied without prejudice on the question of their duty to indemnify Wojtanik and Pollack.

B. Duty to Defend

Because the duty to defend is broader than the duty to indemnify, the same concerns do not apply. See Shafe, 653 S.E.2d at 873. "Although an insurer need not indemnify an insured for a liability the insured incurs outside the terms of the insurance contract, an insurer must provide a defense against any complaint

---

[6] The Parties agreed that discovery from the Superior Court case would be sufficient to resolve this case. (Doc. No. 28, at 3.) Because the Superior Court action was refiled, discovery had apparently not finished by the time the instant motion was filed. (See Defs.' Resp. to Mot. for Summ. J. at 37.) Motions to dismiss and for judgment on the pleadings are pending in the Superior Court case.

that, if successful, might potentially or arguably fall within the policy's coverage." Elan Pharm. Rsch. Corp. v. Emps. Ins. of Wausau, 144 F.3d 1372, 1375 (11th Cir. 1998) (citing Penn-America Ins. Co. v. Disabled Am. Veterans, Inc., 490 S.E.2d 374, 376 (Ga. 1997)). When determining whether an insurer owes a duty to defend a particular lawsuit, Georgia law requires courts to compare the allegations in the complaint and the facts supporting it to the terms of the insurance contract. Id. (citing Great Am. Ins. Co. v. McKemie, 259 S.E.2d 39, 40-41 (Ga. 1979)). If the allegations in the complaint "bring the occurrence even arguably within the policy's coverage, the insurer has a duty to defend the action." Allstate Ins. Co., 265 F. Supp. 3d at 1366 (quoting Penn-America Ins. Co., 481 S.E.2d 850, 852 (Ga. 1997)). No duty to defend exists only if the policy unambiguously excludes coverage. Id. Nonetheless, any doubt as to an insurer's duty to defend should be resolved in favor of the insured. Id. (citing Auto-Owners Ins. Co. v. State Farm Fire & Cas. Co., 678 S.E.2d 196, 199-200 (Ga. Ct. App. 2009)).

Framed in the language of the Policies, the question before the Court is whether Wojtanik and Pollack qualified as "[a]nyone else while using with [Taylor's] permission a covered 'auto' you [Taylor] own, hire or borrow . . . ." (Monroe Policy at 57; Umbrella Policy at 24.) Wojtanik and Pollack fall within the category of "anyone else" and the truck and trailer were covered autos. (See

14

Monroe Policy at 24-49 (schedule of covered autos).) That leaves the issue of Wojtanik and Pollack's permission and whether the incident occurred "while" Wojtanik was using a Taylor vehicle.

Permission is not defined within the Policies, but Georgia courts have broken the concept of permission into implied and express permission. See Hodges v. Ocean Accident & Guarantee Corp., 18 S.E.2d 28, 31 (Ga. Ct. App. 1941) ("The term 'permission' is universally held to mean either express or implied permission."). It is clear that there was no express permission here; Wojtanik's permission to drive Taylor vehicles was revoked when he lost his license, and Pollack never received express permission. Defendants therefore rely on a theory of implied permission to survive summary judgment.

Implied permission may be determined from the facts and circumstances surrounding the use of a vehicle at the relevant time. FRANK E. JENKINS III & WALLACE MILLER III, GEORGIA AUTOMOBILE INSURANCE LAW - INCLUDING TORT LAW - WITH FORMS § 12:6 (2020-2021 ed.) (citing Am. Emps. Ins. Co. v. Johns, 178 S.E.2d 207, 210 (Ga. Ct. App. 1970) (ruling that jury was entitled to consider "all of the facts and circumstances" in arriving at whether a reasonable person would have believed he or she had permission to use the vehicle); Hemphill v. Home Ins. Co., 174 S.E.2d 251 (Ga. Ct. App. 1970); Cotton States Mut. Ins. Co. v. State Farm Mut. Auto Ins. Co., 164 S.E.2d 262 (Ga. Ct. App. 1968)). However, when a driver is expressly forbidden

15

from using a vehicle, the driver is not a permissive user.  <u>See</u>
<u>Ditmyer v. Am. Liberty Ins. Co.</u>, 160 S.E.2d 844, 850 (Ga. Ct. App.
1968); <u>Select Ins. Co. v. Register</u>, 384 S.E.2d 238, 240 (Ga. Ct.
App. 1989).

*1. Wojtanik*

    Two issues surround Plaintiffs' duty to defend Wojtanik.  First
is his permission and second is whether connecting the trailer to
the truck falls within the Policies' temporal and usage
requirements.  Because of the suspension of his driver's license,
Wojtanik knew very well that he should not be driving the Taylor
truck or any other motor vehicle.  (Wojtanik Dep. at 105-06).  But
there are ample facts and circumstances from which a reasonable
jury could infer Wojtanik had implied permission to use the Taylor
trailer: Wojtanik was permitted to keep Taylor vehicles at his
house, Donaldson "turned a blind eye" to personal use of Taylor
vehicles, and Pollack evidently felt comfortable enough to use the
Taylor truck and trailer on the day of the incident.  <u>See</u> <u>Am. Emps.</u>
<u>Ins. Co.</u>, 178 S.E.2d at 210.  Thus, a question of fact exists
regarding Wojtanik's implied permission to use the trailer.

    Defendants also argue that Wojtanik "used" a "covered auto"
when he attached the trailer to the truck at some time before the
incident.  Plaintiffs argue that the Policies provide coverage only
"<u>while using</u> with [Taylor's] permission" (emphasis added) a covered

16

auto.  So, Plaintiffs argue, attaching the trailer was neither "while" the incident occurred nor "use" of a covered auto.

At the threshold, there is another question of material fact as to whether Wojtanik even connected the trailer to the truck.  He testified that he could not remember whether it was he or his driver that had last attached the trailer to the truck before the incident. But that question cannot make it to a jury if the action of attaching the trailer is not at least arguably covered by the Policies.  For the purposes of analyzing whether the action is arguably covered, it is assumed that Wojtanik connected the trailer.

The Court of Appeals of Georgia has developed certain factors for determining whether a vehicle or trailer was "in use" by the terms of an insurance policy.  See Old Republic Union Ins. Co. v. Floyd Beasley & Sons, Inc., 551 S.E.2d 388, 391-92 (Ga. Ct. App. 2001).[7]  The factors are 1) whether the trailer was being utilized at the time, and what use it was put to, in the plain meanings of those terms, 2) the physical proximity of the trailer to the accident, and 3) the nature of the conduct which caused the injury. Gowen Oil Co. v. United Fuel Express, Inc., 2013 WL 12181715, at *5 (S.D. Ga. Mar. 19, 2013) (citing Old Republic Union Ins. Co., 551 S.E.2d at 391-92).  The novelty in applying those factors to this

---

[7] This case considered whether a trailer parked on the roadside that caused an automobile wreck was in use at the time of the accident. Old Republic Union Ins. Co., 551 S.E.2d at 390.  That did not constitute use under the three factors.  Id. at 392.

case is that Wojtanik was not the one driving the truck and trailer at the time of the accident.

By the plain meaning of the terms, the trailer was in use.  A trailer's primary use is to be attached to a vehicle to haul cargo, which is exactly what Wojtanik did.  He did not park the trailer on the side of the road like in Old Republic, 551 S.E.2d at 391-92, and the trailer was not a mere "instrumentality" like the fuel trucks in Gowen Oil, 2013 WL 12181715, at *5.  As for the second factor, there is no dispute that the trailer was physically proximate to the incident; its contact with Brian Lloyd was the cause of his injuries.  These two factors both weigh in favor of a duty to defend Wojtanik.  But it is the third factor that is the strongest of the three.  An essential step in the use of a trailer is attaching it to a vehicle to pull it.  Without ever being attached to a vehicle, a trailer is no more than a storage platform.  And the attaching of the trailer to the truck in this case was both a proximate and counterfactual cause of the incident.  See Gowen Oil, 2013 WL 12181715, at *5 (discussing the third factor in terms of causation).

The weight of these three factors leads to the conclusion that connecting the trailer to the truck is an action at least arguably covered under the Policies.  Therefore, the questions of whether Wojtanik did in fact connect the trailer to the truck and whether he had implied permission to use the trailer should be submitted to

18

a jury.  Summary judgment is denied with respect to Plaintiffs'
duty to defend Wojtanik.

*2. Pollack*

    As with Wojtanik, Pollack did not have express permission to
drive the Taylor vehicles, so Defendants rely on implied permission.
They argue that Taylor, through Donaldson, created a "a pattern and
practice of allowing personal use of . . . company vehicle[s]."

    The evidence on whether Pollack had permission to drive the
Taylor vehicle is conflicting.  On the one hand, Donaldson denied
ever having given any type of permission to Pollack to drive the
vehicle.  On the other, Wojtanik recalled Donaldson having given
permission to Pollack at least once, and according to Wojtanik and
Pollack, Donaldson was aware that Pollack used the Taylor truck on
occasion for personal use, for example, her trips to the dump.  At
summary judgment, it is inappropriate for the Court to weigh
conflicting evidence or make credibility determinations; the
nonmovant's evidence must be believed.  Wate v. Kubler, 839 F.3d
1012, 1018 (11th Cir. 2016).  Georgia law states that the duty to
defend exists if there is even arguable coverage and that any doubt
about the duty to defend should be resolved in favor of the insured.
See Allstate Ins. Co., 265 F. Supp. 3d at 1366.  Construing the
conflicting evidence in Defendants' favor, it is arguable that
Pollack had implied permission to drive the Taylor vehicle at the

time of the incident, and therefore summary judgment is inappropriate on Plaintiffs' duty to defend Pollack.

### V.   CONCLUSION

Upon the foregoing, Plaintiffs' motion for summary judgment (doc. no. 30) is **DENIED IN PART** and **DENIED WITHOUT PREJUDICE IN PART**.  The motion is denied without prejudice on the question of Plaintiffs' duty to indemnify Wojtanik and Pollack until liability is established in the Superior Court case.  The motion is denied as to Plaintiffs' duty to defend Wojtanik and Pollack.  The Parties are **DIRECTED** to file a status report explaining the progress of the Superior Court case and recommending a date for trial in this case within **60 days** of this Order.

**ORDER ENTERED** at Augusta, Georgia, this ____8ω____ day of June, 2021.

_____
UNITED STATES DISTRICT JUDGE